*L. C. Ryan* and *A. C. Pate,* for defendants.

---

FAIRCLOTH *v.* FULGHUM.

97b 357
100 502

*Simmons, C. J.*—The plaintiff having by his evidence established a clear right to recover the premises in dispute, and the defense being that the defendant was induced to purchase the land from another by reason of a fraud practised upon her by the plaintiff's father, in which the plaintiff so far participated as to be estopped from disputing the validity of the title she acquired by such purchase, and there being no evidence connecting the plaintiff with the perpetration of the alleged fraud, there was no issue to be submitted to the jury, and accordingly no error in directing a verdict for the plaintiff.

October 21, 1895.　　　*Judgment affirmed.*

Ejectment. Before Judge Smith. Wilcox superior court. March term, 1895.

The land sued for was lot 92 in the 5th district of Wilcox county. The plaintiff, A. C. Fulghum, showed a complete chain of title, beginning with an original plat and grant from the State to Robert Greer's orphans, dated September 3, 1841. It appeared for the defendant, that about four years before the suit was brought, and about three years before the date of the deed to plaintiff, his father, R. G. Fulghum, asked defendant if she desired to purchase the land, and what she would give for it; stating that if she so desired, she could obtain the deeds to the same from Rycroft, and that he could see nothing wrong with

Rycroft's deed, who would take $200 for the land. In this conversation she stated to R. G. Fulghum that if he thought Rycroft's deeds were not good, she would not buy the land; and relying on the information he so gave her, she bought the land (then a wild lot) in good faith, built a house upon it, and cultivated several acres of it. Shortly after her purchase, R. G. Fulghum came to her, called for her deeds, and compared them with those of the plaintiff. In addition to the deeds she received from Rycroft, he delivered to her a plat and grant of the lot; all of which title papers she turned over to Judge Pate, and had not since seen them. She never had any talk with plaintiff about the lot. One Miller testified, that plaintiff had stated to him that he and his father had talked of the land, that his father was familiar with defendant's titles, and they were defective, those under which plaintiff claimed being the perfect titles. Plaintiff testified, denying the conversation mentioned by Miller. He had consulted with his father as to various lands, but never about this. His father told him who was the true owner of the lot, and from whom he could obtain the title cheaply. His father made no suggestion to him about the purchase of the land, but he gave his father the money to purchase it, and sent him to make the trade. His father was his general agent while he was out of the State, long after the purchase of this lot. After defendant's purchase, defendant and his father had talked of the lot and of said purchase. His father knew well of the real title under which he held; had been a special friend of one of the Greers who conveyed to plaintiff, for many years prior to defendant's purchase. R. G. Fulghum testified, that he had no such conversation as testified by defendant, but told her before she bought that she had better consult a lawyer and have the deeds examined. He was an expert on questions of title, had examined the deeds and plat and grant of defendant, and pronounced said plat and grant (to Robert J. Greer) a forgery. He had nothing to do with

.advising defendant to purchase the land. He bought it for plaintiff, who had no knowledge (so far as he knew) that defendant had purchased it. He did not tell plaintiff of the Rycroft deed.

The court directed a verdict for the plaintiff, and the defendant excepted.

*T. C. Taylor* and *D. M. Roberts*, for plaintiff in error.

*J. H. Martin*, contra.